**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURA AMMONS, BRANDON DERRICK, LETIA DICKERSON, JEFFREY HOLT, JERRY MERKEL, and LYNN SEDA, Individually and On Behalf of All Others Similarly Situated, | **Case No. 1:24-cv-01513** |
| Plaintiffs, | |
| v. | |
| CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; BRIDGESTONE AMERICAS, INC.; AND DOES 1-100, | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTORITIES ...................................................................................... iii

I.      INTRODUCTION ............................................................................. 1

II.     JURISDICTION AND VENUE .......................................................... 2

III.    PARTIES ......................................................................................... 3

        A.      PLAINTIFFS ........................................................................ 3

        B.      DEFENDANTS ..................................................................... 4

                1.      Continental ............................................................. 4

                2.      Michelin ................................................................. 6

                3.      Nokian Tyres .......................................................... 7

                4.      Goodyear ................................................................ 8

                5.      Pirelli ..................................................................... 9

                6.      Bridgestone ............................................................ 9

                7.      DOE Defendants ..................................................... 10

IV.     AGENTS AND CO-CONSPIRATORS ............................................ 10

V.      CLASS ACTION ALLEGATIONS .................................................. 11

VI.     FACTUAL ALLEGATIONS ............................................................ 14

        A.      Tire Market ......................................................................... 14

        B.      Tire Prices in the United States Increased Dramatically After Long Period of
                Relatively Stable Pricing .................................................... 16

        C.      Defendants' Participation in the Tire Market ....................... 22

        D.      Factors Corroborating Defendants' Horizontal Price-Fixing Agreement ............... 23

                1.      Motive .................................................................... 24

                2.      Opportunity ............................................................ 25

                3.      Barriers to Entry ..................................................... 26

|    | 4. | Price Inelasticity for Tires Makes the Market Susceptible to Collusion..... 27 |
|    | 5. | Tires are Standardized Products with a High Degree of Interchangeability 28 |
|    | 6. | Defendants are Recidivist Violators of Antitrust Laws .............................. 29 |
| VII. | TOLLING OF THE STATUTES OF LIMITATIONS ....................................................... 29 |
| VIII. | CLAIMS FOR RELIEF ....................................................................................... 30 |
| IX. | PRAYER FOR RELIEF ....................................................................................... 44 |
| X. | JURY TRIAL DEMANDED ................................................................................. 45 |

Plaintiffs Laura Ammons, Brandon Derrick, Letia Dickerson, Jeffrey Holt, Jerry Merkel, and Lynn Seda, on behalf of themselves and all others similarly situated, bring this Class Action Complaint for damages and injunctive relief against named Defendants Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc.; and unidentified Doe Defendants for violations of Section 1 of the Sherman Act (15 U.S.C. § 1) and various state antitrust and consumer protection laws. All allegations herein other than those concerning Plaintiffs are based on information and belief.

## I.    **INTRODUCTION**

1.      This action arises from a *per se* unlawful agreement between Defendants—some of the largest tire manufacturers in the United States and the world—to artificially increase and fix the prices of new replacement tires for passenger cars, vans, trucks and buses ("Tires") sold in the United States. Defendants coordinated price increases, including through public communications.

2.      On January 30, 2024, the European Commission ("EC") announced dawn raids at the premises of "companies active in the tyres industry in several Member States."[1] The EC justified its dawn raids over suspicion that these companies "violated EU antitrust rules that prohibit cartels and restrictive business practices," specifically that price coordination took place amongst these companies.[2]

---

[1] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561

[2] *Id.*

3.      Defendants' unlawful agreement to fix prices of Tires is supported by, among other things: (i) Defendants' sudden and dramatic parallel price increases, which absent a conspiracy to fix prices, ran contrary to their economic interests; (ii) EC dawn raids of Defendants, (iii) the high level of market concentration in the Tire market; (iv) significant barriers to entry, (v) lack of economic substitutes for Tires, (vi) standardization of Tires with a high degree of interchangeability; and (vii) the myriad opportunities that employees of Defendants had to conspire with one another to fix prices of Tires, coupled with their motivation to achieve such an unlawful end.

4.      Plaintiffs seek to represent a Class of individuals that purchased Tires indirectly from Defendants at supracompetitive prices to recover treble damages, injunctive relief, and other relief as is appropriate, based on Defendants violation of state and federal antitrust laws. Plaintiffs demand a trial by jury.

## II.    JURISDICTION AND VENUE

5.      The Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1337(a), and 1367. The Court has jurisdiction over Plaintiffs' claim for injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.

6.      This Court has personal jurisdiction over Defendants because they purposefully directed its business activity toward this jurisdiction and had substantial contacts with this jurisdiction, and because Plaintiffs' claim for relief arises from and relate to illegal acts committed by Defendants within this jurisdiction. Plaintiffs paid unlawful overcharges for Tires and suffered antitrust injury within this jurisdiction.

7.      Venue is proper in this district under 28 U.S.C. §§ 1391(a), (b), (c), and (d), and 15 U.S.C. §§ 15(a) and 22. During the Class Period (defined below), Defendants transacted business in this District, and a substantial portion of the activity at issue in this case occurred in

this District. Defendant Michelin North America, Inc. at all relevant times was incorporated under the laws of the State of New York.

8.     Defendants' conduct alleged herein occurred within the flow of interstate commerce, including in this District, and was intended to and did have a direct and substantial effect upon such commerce.

9.     During the Class Period, Defendants manufactured, sold, and shipped Tires in a continuous and uninterrupted flow of interstate commerce, which included sales of Tires in this District, advertisement of Tires in media in this District, and employment of sales personnel in this District. Defendants' conduct had and continues to have a direct, substantial, and reasonably foreseeable effect on interstate commerce, including commerce within this District.

## III.   PARTIES

### A.   PLAINTIFFS

10.     Plaintiff Laura Ammons is a resident of the State of Nevada.  Ammons purchased Goodyear Tires within the State of Nevada indirectly through a retailer during the Class Period defined herein.

11.     Plaintiff Brandon Derrick is a resident of the State of North Carolina.  Derrick purchased Continental Tires within the State of North Carolina indirectly through a retailer during the Class Period defined herein.

12.     Plaintiff Letia Dickerson is a resident of the State of North Carolina.  Dickerson purchased Michelin Tires within the State of North Carolina indirectly through a retailer during the Class Period defined herein.

13.     Plaintiff Jeffrey Holt is a resident of the State of Illinois.  Holt purchased Goodyear Tires within the State of Illinois indirectly through a retailer during the Class Period defined herein.

14.    Plaintiff Jerry Merkel is a resident of the State of Missouri.  Merkel purchased Michelin Tires within the State of Missouri indirectly through a retailer during the Class Period defined herein.

15.    Plaintiff Lynn Seda is a resident of the State of California.  Seda purchased Continental Tires within the State of California indirectly through a retailer during the Class Period defined herein.

### B.    DEFENDANTS

#### 1.    Continental

16.    **Defendant Continental Aktiengesellschaft** ("Continental AG)," is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG has four group sectors: Automotive, Tires, ContiTech, and Contract Manufacturing.[3] The Tires group has five business areas: (i) Original Equipment, (ii) Replacement APAC, (iii) Replacement EMEA, (iv) Replacement the Americas, and (iv) Specialty Tires.[4]

17.    In its 2022 Annual Report, Continental AG reported that its "Tires group sector achieved a particularly positive result, even surpassing expectations with an adjusted EBIT margin of 13.1 percent."[5] In 2022, Continental AG reported sales of €14 billion globally for its tire group.[6] Continental AG's tire group boasts 56,987 employees worldwide.[7]

---

[3] Continental 2022 Annual Report, pg. 26, https://cdn.continental.com/fileadmin/_imported/sites/corporate/_international/english/hubpage s/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pd f?_gl=1*9f4olq*_ga*MTcxMDgzNzQ4Ni4xNzA2NjMyMDgz*_ga_CXY4Q1X5YZ*MTcwNjc xNTA5MS4zLjEuMTcwNjcxNTI1NS4wLjAuMA.

[4] *Id.* at 75.

[5] *Id.*

[6] *Id.*

[7] *Id.*

18.    In the Tires group sector, sales to dealers and end users represent the largest share of the tire-replacement business.[8] For the Tires group sector, economies of scale are important drivers of profitability. For that reason, "manufacturing takes place at major locations in the dominant automotive markets, namely Europe, the U.S., and China.[9]

19.    **Defendant Continental Tire the Americas, LLC** ("Continental U.S.") is a limited liability company incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental U.S. "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[10] Continental US sells its tires through "independent tire dealers, car dealers, and mass retail companies across North America."[11] Continental U.S. has manufacturing facilities in Barnseville, Georgia (Tire Cord [textile]), Mt. Vernon, Illinois (Passenger/light truck/Commercial truck tires), Sumter, South Carolina (passenger/light truck tires), and Jackson, Missouri (commercial truck tires).[12] Continental U.S.'s headquarters in Fort Mill, SC is the "operational hub for business in the region and oversees all tire product lines including passenger, light truck, commercial, two wheel and specialty tires."[13] The facility has 500+ employees and includes teams for engineering & technology, Sales & marketing, and "central functions."[14]

---

[8] *Id.* at 26

[9] *Id.* at 28.

[10] https://www.ustires.org/continental-tire-americas-llc

[11] *Id.*

[12] *Id.*

[13] https://www.continental.com/en-us/career/our-locations/fort-mill/

[14] https://www.continental.com/en-us/career/our-locations/fort-mill/

20.    Continental U.S.'s Sumter Plant is "a tire manufacturing facility [that] produces high-quality, premium lines of passenger and light truck tires for original equipment and replacement markets."[15] It has a "State of the Art manufacturing facility with a growing team of more than 1200 employees."[16]

### 2.    Michelin

21.    **Defendant Compagnie Générale des Établissements ("CGEM")** is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. CGEM is the Michelin Group's parent company, which directly or indirectly owns all of its subsidiaries.[17] CGEM's two main subsidiaries are Manufacture Française des Pneumatiques Michelin ("MFPM"), a wholly-owned subsidiary that coordinates all of the Group's manufacturing, sales and research operations in France and Compagnie Financière Michelin ("CFM"), a wholly-owned subsidiary that owns most of the Group's manufacturing, sales and research companies outside of France and coordinates their operations.[18]

22.    **Defendant Michelin North America, Inc.** is a corporation organized under the laws of the State of New York with its principal place of business at One Parkway South, Greenville, SC 29615-5022. Michelin designs, manufactures, and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks, and motorcycles.[19] Michelin is one of the leading manufacturers of tires in the United States. In 2022, Michelin had €10.92 billion in sales, 80% of which were generated in the United

---

[15] https://www.continental.com/en-us/career/our-locations/sumter/

[16] *Id.*

[17] Michelin 2022 Universal Registration Document, at pg. 403.

[18] *Id.*

[19] https://www.ustires.org/michelin-north-america-inc

States.[20] Michelin employs 23,000 people across 34 plants in the United States and Canada.[21] Michelin has manufacturing facilities in, *inter alia*, Alabama (light trucks and passenger tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger tires and truck and bus tires).

### 3.    Nokian Tyres

23.    **Defendant Nokian Tyres plc** is organized under the laws of Finland with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which includes subsidiaries worldwide. Nokian Tyres plc develops and manufactures tires for passenger cars, trucks, and heavy machinery. In 2019, the company's net sales were $1.8 billion, and it employed some 4,700 people.

24.    **Defendant Nokian Tyres Inc.** is a corporation organized under the laws of the State of Delaware. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. In December of 2018, Nokia Tyres announced its new headquarters located at 501 Union Street in Nashville, Tennessee, which would house Nokia Tyres' Vice President, along with members of the company's sales, customer service, IT, logistics, finance, and marketing teams.[22] In 2017, Nokian Tyres announced it had opened a $360 million manufacturing facility located at 520 Nokian Tyres Dr., Dayton, TN., 37321.[23] The manufacturing facility produces car and light truck all season tires and all-weather tires for consumers in the United States and Canada.

---

[20] Michelin 2022 Universal Registration Document, at pg. 14

[21] https://michelinmedia.com/site/user/files/1/MNA-Fact-Sheet-2023_2.pdf

[22] https://www.nokiantyres.com/company/news-article/nokian-tyres-appoints-mr-mark-earl-to- lead-the-americas-business-area-as-of-may-1-2018/; https://www.nokiantires.com/company/news-article/nokian-tyres-thriving-in-new-nashville- headquarters/

[23] https://journalrecord.com/2019/10/nokian-tyres-opens-360m-tire-factory-in-tennessee/

25.     **Defendant Nokian Tyres U.S. Operations LLC** is a limited liability company organized under the laws of the State of Tennessee. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

### 4.     Goodyear

26.     **Defendant The Goodyear Tire & Rubber Company** is a corporation organized under the laws of the State of Ohio with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear is one of the world's leading tire companies, with one of the most recognizable brand names. It develops, manufactures, markets and distributes tires for most applications and manufactures and markets rubber-related chemicals for various uses.[24] Through its worldwide network of aligned dealers and wholesale distributors and its own retail outlets and commercial truck centers, Goodyear offers its products for sale to consumer and commercial customers, along with repair and other services.[25] Goodyear manufactures its products in 57 facilities in 23 countries and has operations in most regions of the world.[26] Goodyear manufactures and sells under the Goodyear, Cooper, Dunlop, Kelly, Debica, Sava, Fulda, Mastercraft and Roadmaster brands.[27]Approximately 86% of Goodyear's sales in 2022, 85% in 2021 and 84% in 2020 were for tire units.[28] The principal channel for the sale of Goodyear and Cooper brand tires in Americas is a large network of independent dealers. Goodyear, Cooper, Dunlop, Kelly and Mastercraft brand tires are also sold to numerous national and regional retailers, in Goodyear Company-owned stores in the United States, and through the

---

[24] Goodyear 10K 2022, pg. 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf

[25] *Id.*

[26] Goodyear 10K 2022, pg. 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf

[27] https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296

[28] https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296

wholesale channel, including through TireHub, LLC, Goodyear's national wholesale tire distributor in the United States, and a network of aligned U.S. regional wholesale tire distributors.[29]

### 5.    Pirelli

27.    **Defendant Pirelli & C. S.p.A.** is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy. Pirelli designs, manufactures, and distributes tires for cars, motorcycles, and bicycles. Pirelli focuses its business on the high end, premium product segment where it is a world leader. Pirelli has a commercial presence in over 160 countries and 19 manufacturing sites in 12 countries.[30]

28.    **Defendant Pirelli Tire LLC** is a foreign limited liability company organized under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, GA 30161. Pirelli Tire LLC includes the Modular Integrated Robotized System (MIRS) facility and research and development center at its Rome, Georgia headquarters, a state-of-the-art manufacturing plant in Silao, Mexico, sales and marketing offices in New York City, Los Angeles, Detroit, Montreal and Atlanta, and a prestige flagship store in Los Angeles.[31] The company manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications.

### 6.    Bridgestone

29.    **Defendant Bridgestone Corporation** is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Bridgestone Corporation is the parent corporation of the Bridgestone Group (the "Group"),

---

[29] Goodyear 2023 10K, pg. 3. https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8- 98a1-b60e30bb1296

[30] https://www.ustires.org/pirelli-tire-llc

[31] https://www.ustires.org/pirelli-tire-llc

which refers to all Group companies, including Bridgestone Americas ("BSAM"), Bridgestone China, Asia Pacific ("BSCAP"), Bridgestone Europe, Russia, Middle East, India, and Africa ("BSEMIA"), and Bridgestone Japan ("BSJP").[32] Bridgestone Corporation is the world's largest tire and rubber company.[33]

30.    **Defendant Bridgestone Americas, Inc. ("BSAM")** is incorporated under the laws of Nevada with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires to address the needs of a broad range of customers, including consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry and mining industries.[34] BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[35]

### 7.    DOE Defendants

31.    DOE Defendants 1–100 are other individuals or entities who engaged in or abetted the unlawful conduct by Defendants set forth in this Complaint. Plaintiffs may amend this Complaint to allege the names of additional Defendants as they are discovered.

## IV.    AGENTS AND CO-CONSPIRATORS

32.    The anticompetitive and unlawful acts alleged against the Defendants in this Complaint were authorized, ordered, or performed by Defendants' respective officers, agents,

---

[32] https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf

[33] https://www.ustires.org/bridgestone-americas-inc

[34] https://www.ustires.org/bridgestone-americas-inc

[35] *Id.*

employees, or representatives, while actively engaged in the management, direction, or control of Defendants' businesses or affairs.

33.     Each corporate Defendant's agents operated under the authority and apparent authority of its respective principals.

34.     Each corporate Defendant, through its respective subsidiaries, affiliates, and agents, operated as a single unified entity.

35.     Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

36.     Each Defendant acted as the principal or agent of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

37.     When Plaintiff refers to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that the Plaintiff is alleging that one or more employee or agent of entities within the corporate family engaged in conspiratorial acts or meetings on behalf of all of the Defendant companies within that family. Furthermore, to the extent that subsidiaries within corporate families distributed the Tire products discussed in this Complaint, these subsidiaries played a significant role in the conspiracy because Defendants wished to ensure that the prices paid for such products would not undercut their pricing agreements. Thus, all Defendant entities within the corporate families were active, knowing participants in the conspiracy to maintain supracompetitive prices.

## V.    CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action for damages and injunctive relief on behalf of themselves and a class of similarly situated persons and entities pursuant to Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), with the class initially defined to include:

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within a state or territory of the United States whose laws permit an indirect purchaser to pursue a claim for anticompetitive conduct, from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period").

39.     Additionally, Plaintiffs bring this action on behalf of the following subclasses:

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within the State of California from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period") (the "California Subclass")

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within the State of Illinois from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period") (the "Illinois Subclass")

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within the State of Missouri from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period") (the "Missouri Subclass")

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within the State of Nevada from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period") (the "Nevada Subclass")

All persons or entities that purchased replacement Tires indirectly, for use and not resale, from Defendants within the State of North Carolina from January 1, 2020, until the time that the adverse effects of Defendants' anticompetitive conduct ceased (the "Class Period") (the "North Carolina Subclass")

40.     The Class and the Subclasses may collectively be referred to as the "Class" or the "Classes."

41.     The class definition specifically excludes the following persons or entities: (a) any of the Defendants named herein; (b) any of the corporate Defendants' parent companies,

12

subsidiaries, and affiliates; (c) any of the Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; and (e) the judges and chambers staff in this case, as well as any members of their immediate families; and (f) all jurors assigned to this case.

42.    Plaintiffs do not know the exact number of Class members, but due to the nature of the trade and commerce involved, there are millions of Class members geographically dispersed throughout the United States including in every state that permits an indirect purchaser to assert a claim for damages, such that joinder of all Class members in the prosecution of this action is impracticable.

43.    Plaintiffs' claims are typical of the claims of her fellow Class members because Plaintiffs purchased Tires during the Class Period directly from Defendants. Plaintiffs and all Class members were damaged in the same manner by the same wrongful conduct of Defendants as alleged herein, and the relief sought herein is common to all members of the Class.

44.    Numerous questions of law or fact common to the entire Class—including, but not limited to those identified below—arise from Defendants' anticompetitive and unlawful conduct:

- Whether Defendants contracted, combined or conspired with one another to restrain trade of Tires at any time during the Class Period;

- Whether Defendants' conduct caused the prices of Tires sold directly to wholesalers, retailers, and consumers to be higher than the competitive level as a result of their restraint of trade;

- Whether Plaintiffs and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class- wide measure of damages; and

- Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such relief.

45.    These and other questions of law and fact are common to the Class and predominate over any questions affecting the Class members individually.

46.    Plaintiffs will fairly and adequately represent the interests of the Class because she purchased Tires directly from Defendants within the United States during the Class Period and has no conflicts with any other members of the Class. Furthermore, Plaintiffs have retained sophisticated and competent counsel who are experienced in prosecuting antitrust class actions, as well as other complex litigation.

47.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

48.    This class action is superior to other alternatives for the fair and efficient adjudication of this controversy. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

49.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VI.    <u>FACTUAL ALLEGATIONS</u>

### A.    **Tire Market**

50.    Virtually all wheeled land vehicles in operation, whether off-road or on-road, use tires. This dependence makes the tire industry a critical component of the U.S. automobile industry. With nearly 9.2 million passenger and commercial vehicles being produced and almost

14 million vehicles being sold in the United States in 2022, the U.S. market calls for a large number of tires to be manufactured annually.

51.    Given the critical need for tires in all wheeled land vehicles, automobile tire manufacturers have existed in the United States as long as there have been cars. For example, Defendant Goodyear began producing automobile tires in 1899.[36]

52.    U.S. tire manufacturing has an annual economic footprint of $170.6 billion.[37]The United States Tire Manufacturers Association ("USTMA") projects total U.S. tire shipments of 334.2 million units in 2023, compared to 332.0 million units in 2022 and 332.7 million units in 2019.[38] The market for replacement tires in the United States was sized at approximately $61 billion in 2022.

53.    Manufactured tires can either be used in new cars ("Original Equipment Tires" or "OE" tires) or produced as replacement tires ("Dedicated Replacement Tires"). There are differences between OE tires and Dedicated Replacement Tires. OE tires are those tires that are specified by the vehicle manufacturer and are initially fitted to the vehicle when new. The car manufacturer works with tire companies to choose a tire that will meet any number of performance requirements for their brand-new vehicle. The manufacturer selects a tire that balances ride noise, handling, longevity, and fuel efficiency to achieve the overall characteristics that the vehicle manufacturer believes is important to the end-user.

54.    By contrast, Dedicated Replacement Tires are selected by individual consumers.

---

[36] https://corporate.goodyear.com/us/en/about/history.html

[37] https://www.ustires.org/economy

[38] https://www.ustires.org/2023-tire-shipment-outlook

**B.    Tire Prices in the United States Increased Dramatically After Long Period of Relatively Stable Pricing**

55.    For most of the 2010s, the price level of Tires was stable, changing only by small amounts slowly. Over the last four years, however, the prices of Tires have seen dramatic increases, driven by lock-step prices increases from the major U.S. Tire manufacturers.



56.    The following table summarizes Defendants' price increases on passenger and light truck replacement tires between 2021 and 2023:

| Defendant | Effective Date | Price Increase |
| --- | --- | --- |
| Michelin | February 1, 2021 | Up to 5% |
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |
| Goodyear | April 1, 2021 | Up to 8% |
| Pirelli | April 15, 2021 | Up to 7% |
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |

| Continental | April 1, 2022 | Undisclosed |
|---|---|---|
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |
| Michelin | June 1, 2022 | 5-12% |
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |
| Michelin | January 1, 2023 | Up to 9% |
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

57.    Effective February 1, 2021, Michelin increased prices on select Michelin and BFGoodrich brand passenger and light truck tires, as well as on select commercial truck tires, up to 5% "due to changing business dynamics of the U.S. market."[39]

58.    Effective March 1, 2021, Continental increased prices on select passenger and light truck tires in the U.S. within the Continental and General brands by an undisclosed amount.[40]

59.    Effective April 1, 2021, Michelin and Goodyear both increased prices on tires. Michelin increased prices on select Michelin, BFGoodrich and Uniroyal passenger and light truck tires up to 8%, citing "changing business dynamics and rising costs of raw materials."[41] Goodyear raised prices of its Goodyear, Dunlop, and Kelly-brand consumer tires by up to 8%.[42]

---

[39] https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raise- consumer-commercial-prices-on-feb-1-2020-12-19

[40] https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plans- price-hike-on-plt-tires-2021-01-06

[41] https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise- consumer-tire-prices-on-april-1-2021-03-01

[42] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to- increase-consumer-tire-prices-2021-03-03

60.    Effective April 15, 2021, Pirelli increased prices on passenger and light truck tires in the United States up to 7%, citing "higher price of raw materials and changing market conditions."[43]

61.    Effective May 1, 2021, Bridgestone increased prices on select Bridgestone and Firestone brand passenger and light truck tires up to 8% in the United States and Canada due to "increased business costs and other market dynamics."[44]

62.    Effective June 1, 2021, Goodyear increased prices on Goodyear, Dunlop, and Kelly consumer tires by up to 8%. Goodyear blamed the increase on "changing market dynamics in the industry and [a] reflect[ion of] the strong value of the Goodyear brands"—using identical wording from its April 1, 2021 price increase.[45]

63.    Effective July 1, 2021, Michelin, Continental, and Pirelli implemented price increases on tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 6%. Continental increased prices on select Continental and General brand passenger and light truck tires by an undisclosed amount.[46] Pirelli increased prices of passenger and light truck tires by up to 6%, citing higher price of raw materials and changing market conditions.[47]

64.    Effective September 1, 2021, Michelin and Goodyear implemented price increases on consumer tires. Michelin increased prices on certain aftermarket Michelin,

---

[43] https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise- prices-in-us-on-april-15-2021-03-09

[44] https://www.moderntiredealer.com/site-placement/featured- stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24

[45] https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans- another-consumer-tire-price-hike

[46] https://www.moderntiredealer.com/topic-category/topics/article/11471940/continental-will- raise-consumer-tire-prices-in-july-1-2021-05-05

[47] https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans- another-price-hike

BFGoodrich, and Uniroyal passenger and light truck tires by up to 14%.[48] Goodyear increased prices on passenger and light truck tires by up to 8%.[49]

65.    Effective October 1, 2021, Continental and Pirelli increased prices on tires. Continental increased prices on some Continental and General passenger and light truck tires by an undisclosed amount.[50] Pirelli increased prices on car and light truck tires by up to 8%, citing higher prices of raw materials and changing market conditions.[51]

66.    Effective January 1, 2022, Defendant Michelin implemented price increases up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and light truck replacement tires.[52] Similarly, Goodyear raised its prices on consumer tires by up to 12%.[53]

67.    Effective January 3, 2023, Continental increased prices on select Continental and General passenger and light truck tires by an undisclosed amount.[54]

68.    Effective January 17, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[55]

69.    Effective April 1, 2022, Defendant Continental, Michelin, and Bridgestone increased tire prices. Continental increased its price on select Continental and General passenger and light trucks by an amount that varied across specific products by brand.[56] Michelin increased

---

[48] https://www.tyrepress.com/2021/08/michelin-announces-north-america-price-increases/

[49] https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper- consumer-tire-prices-are-going-up-modern-tire-dealer

[50] https://www.tirereview.com/continental-tire-announces-price-increase/

[51] https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1

[52] https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across- passenger-brands-and-commercial-offers-in-north-american-market-301435108.html

[53] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1

[54] https://www.tirereview.com/continental-tire-announces-price-increase-2/

[55] https://www.tirereview.com/pirelli-price-increases/

[56] https://www.tirereview.com/continental-tire-announces-price-increase-3/

prices by 5% on the majority of select passenger and light truck replacement tires.[57] Bridgestone increased prices by up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires.[58]

70.    Effective April 11, 2022, Pirelli increased its prices by up to 10%.[59]

71.    Effective June 1, 2022, Defendants Continental and Michelin each increased prices on tires. Continental increased its prices on Continental- and General-branded passenger and light truck tires by an undisclosed amount.[60] Michelin increased prices on the majority of its passenger and light truck replacement tires ranging from 5-12%.[61]

72.    Effective June 15, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[62]

73.    Effective July 1, 2022, Goodyear and Bridgestone each increased prices by up to 10% on consumer tires.[63]

74.    Effective October 1, 2022, Bridgestone again increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck tires by up to 9%.[64]

75.    Effective January 1, 2023, Michelin and Bridgestone each increased their tire prices. Michelin increased prices on select passenger and light trucks tires by up to 9%.[65]

---

[57] https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber%20and%20associated%20supplies,2%2C%202022.

[58] https://www.tirereview.com/bridgestone-price-increase-2/

[59] https://www.tirereview.com/pirelli-increases-price-for-tires/

[60] https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1

[61] https://www.tirereview.com/michelin-price-increase/

[62] https://www.tirereview.com/pirelli-increase-prices-plt-tires/

[63] https://www.tirereview.com/bridgestone-increase-prices/; https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.

[64] https://www.tirereview.com/bridgestone-price-increase-3/

[65] https://www.tirereview.com/michelin-price-increases/

Bridgestone increased its prices on passenger and light truck replacement tires by an undisclosed amount.[66]

76.    Effective January 15, 2023, Pirelli increased its prices for car and light truck tires by up to 10%.[67]

77.    Between 2021 and 2023, the average price of tires rose 21.4%, a rate of increase more than 70% higher than core inflation.[68] Prices for tires have remained high despite easing inflation and dissipating effects of the COVID-19 pandemic.[69]

78.    And Defendants' price increases are disproportionate to their increased costs during the pandemic. For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear's Chief Financial Officer told investors "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[70]

79.    Sales volume also did not suffer due to price increases, which would normally be seen in a price-competitive market. For example, Continental's sales volume rose by 19.3% in 2022. Their annual report from that year indicates "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[71]

---

[66] https://www.tirereview.com/bridgestone-americas-increased-prices/

[67] https://www.tirereview.com/pirelli-increase-prices-tires/

[68] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices

[69] *Id.*

[70] https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call- transcript/

[71] https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf (See page 73)

### C.    Defendants' Participation in the Tire Market

80.    Defendants make up some of the largest tire manufacturers in the world. Bridgestone is the world's largest tire and rubber company,[72] with about 130 manufacturing plants and R&D facilities in 25 countries and sells products in more than 150 countries worldwide. Michelin has nine R&D centers around the world, 123 production sites in 26 countries, a commercial presence in 170 countries and 125,000 employees worldwide, and does business on every continent.[73] Goodyear employs about 72,000 people and manufactures its products in 57 facilities in 23 countries around the world.[74] Pirelli has 18 factories located in 12 countries, production capacity in 2022 of 74 million car tires, and points of sale in over 160 countries (around 20,000 in 2022).[75] Continental employs almost 200,000 people at 519 locations for production, research, and development, and is present in 57 countries and markets. It has 917 company-owned tire outlets and a total of around 5,228 franchises and operations with a Continental brand presence.[76]

81.    The U.S. Tire market is oligopolistic, with three of the Defendants controlling the lion's share of the market: in 2022, Defendants Bridgestone, Michelin, and Goodyear made up almost 64 percent of the entire replacement tire market. Each of the Big Three also

---

[72] https://www.bridgestone.com/

[73] https://www.michelin.com/en/michelin-group/about-us/global-footprint/

[74] https://corporate.goodyear.com/us/en/about.html

[75] https://corporate.pirelli.com/corporate/en-ww/aboutus/pirelli-in-brief

[76] Continental 2022 Annual Report, at pg. 26, https://cdn.continental.com/fileadmin/_imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf?_gl=1*1y8y4jf*_ga*MTcxMDgzNzQ4Ni4NzA2NjMyMDgz*_ga_CXY4Q1X5YZ*MTcwNjk5MTU1Ni42LjEuMTcwNjk5MTU4OC44wLjAuMA.

encompasses subsidiary brands: (i) Goodyear: Goodyear, Cooper Tires, Dunlop, and Kelly, (ii) Michelin: Michelin, BF Goodrich, and Uniroyal, (iii) Bridgestone: Bridgestone and Firestone.[77]

82.    The remaining 36 percent of the market includes manufacturers such as Continental and Nokian.





83.    This concentration makes the Tire market more susceptible to cartelization—a smaller group of competitors is better able to solve the coordination and trust problems that can prevent cartel formation or destabilize an existing cartel. A smaller number of negotiators makes it easier for the conspirators to agree on a cartel price, to allocate market shares, to conceal their collusion, to develop enforcement mechanisms, and to detect and punish cheaters.

**D.    Factors Corroborating Defendants' Horizontal Price-Fixing Agreement**

84.    In addition to lock-step price increases, a European Commission investigation, and a consolidated industry susceptible to collusion, Defendants' unlawful agreement to fix prices of Tires is supported by (i) motive and (ii) opportunity, in a market with (iii) high barriers

---

[77] https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are- getting-bigger-how-can-the-davids-compete/

to entry, (iv) price inelasticity, and (iv) interchangeable products. Defendants are also recidivist bad actors.

### 1.    Motive

85.    The steadily rising number of total vehicle miles in the United States and the low price of rubber created healthy operating conditions for tire manufacturers leading up to the outbreak of COVID-19. But as measures were put into place to combat the spread of the virus, domestic travel stopped and then slowed, reducing demand for tires. In addition, the supply chain struggled even after the COVID-19 pandemic subsided, causing a lasting effect that increased the costs related to logistics and raw materials. This caused profit to shrink as revenue dried up while costs of goods sold increased dramatically.

86.    Investors took note. For example, in February 2022, Goodyear's stock price dropped 25% in one day.[78] Goodyear's stock dropped again in November 2022, this time by 10%.[79]

87.    To remain profitable, Defendants needed to pass on these costs to consumers.

88.    By 2023, inflation had eased, and supply chain logistics had recovered, but tire prices remained high, despite excess supply. For example, in November 2023, the President of the union at the Bridgestone Americas Inc. tire plant in Morrison, Tennessee stated that "Even with [] lower production levels, we still have huge amounts of inventory — more than our warehouse can handle. Our warehouse is full of truck and bus tires. In addition, we have 150 to 175 trailers on our plant's property that are completely full of tires."[80]

---

[78] https://www.barrons.com/articles/goodyear-stock-price-earnings-inflation-pressures-51644599253

[79] https://www.marketwatch.com/story/goodyear-stock-drops-to-lowest-level-in-a-month-as- sales-volumes-worry-wall-street-11667317266

[80] https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-they-competitive

89.    In a normal functioning economy, as costs lowered and there was excess supply, prices would lower too, as inflated prices would lead to a loss of market share. Yet prices remain high, as noted above.

### 2.    Opportunity

90.    Defendants had numerous opportunities to meet and conspire under the guise of legitimate business contacts and to perform acts necessary for the operation and furtherance of the conspiracy. At least throughout the Class Period, the Tire industry provided ample opportunities for Defendants and/or their parent companies to collude and fix the prices of Tires, through trade association meetings and public communications.

91.    Each of the Defendants is a member of the U.S. Tire Manufacturers Association ("USTMA"). The USTMA is the national trade association for tire manufacturers that produce tires in the United States.

92.    Senior executives from each of the Defendants currently serve on the Board of Directors of the USTMA.

93.    The USTMA holds a number of annual conferences and meetings where Defendants had the opportunity to meet and discuss pricing. For example, the USTMA holds a spring and fall meeting for its board members annually, including on July 29, 2020,[81] October

---

[81] https://www.tiretechnologyinternational.com/news/business/ustma-makes-changes-to-its-director-board.html

6, 2021,[82] January 25, 2022,[83] October 6, 2022,[84] April 3–4, 2023,[85] and October 11, 2023.[86] Minutes from these regular meetings are not available to the public.

### 3.    Barriers to Entry

94.    Tire manufacturers face significant entry and exit barriers that lead to market concentration which facilitates collusion. Barriers to entry include large up-front capital investments to establish manufacturing plants that can produce tires at scale. For example, Defendant Nokian recently completed a $360 million manufacturing facility in Dayton, Tennessee.[87] These manufacturing plants need to be close enough to the end consumers to make shipping costs not prohibitive, as tires are heavy products. Manufacturing plants must either have sophisticated and expensive automation or a large and expensive labor force. Established tire manufacturers have also erected significant intellectual property protections through patented products.

95.    As to exit barriers, because a huge amount of investment is required to set up a manufacturing plant and to shift to new business, it is extremely difficult to exit from the tire industry. For example, Uniroyal and Goodrich had to merge due to high exit barriers. Thus, consolidation is more likely than companies going out of business.

96.    Because the Tire market has high barriers to entry, it is more conducive to collusion. To maximize long-term profits, the cartel-fixed price must be sufficiently high to

---

[82] https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari- board-chair

[83] https://www.moderntiredealer.com/retail/article/11466086/ustma-announces-four-new-board- members

[84] https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari- board-chair

[85] https://www.ustires.org/ustma-board-directors-holds-spring-meeting-washington-dc-admits- giti-tire-usa-12th-member-company

[86] https://www.moderntiredealer.com/suppliers/article/33013078/michelin-ceo-named-ustma- chairman

[87] https://www.nokiantires.com/daytonfactory/

warrant participation in a criminal conspiracy but not so high as to lure new competitors into the market. When a market is protected by high barriers to entry, conspirators are better able to fix a high price with less worry that new firms will come into the market and bid the price down. In contrast, firms may not bother to conspire to fix prices if interlopers cannot be excluded from the market.

### 4. Price Inelasticity for Tires Makes the Market Susceptible to Collusion

97.     The price elasticity of demand shows the responsiveness of the quantity demanded of a good relative to a change in its price. When a seller of goods or services can increase selling price without suffering a substantial reduction in demand, pricing is considered inelastic. For example, gasoline has little price elasticity of demand. Drivers will continue to buy as much as they have to, as will airlines, the trucking industry, and nearly every other buyer.

98.     Demand elasticity affects whether price fixing is likely to be profitable. When demand is inelastic, a seller with market power can charge a higher price without losing significant sales. This market characteristic encourages collusion because rivals can collectively raise price profitably.

99.     Tires are highly inelastic because tire replacement is not an option that can be deferred for long, particularly when a tire is damaged. Further, the cost of replacement tires makes up a small percentage of the operating cost of a car.

100.     Furthermore, tires do not compete with other products in the functional sense; consequently, there is no inter-industry competition through cross-elasticities of demand. Since the demand for tires is derived from the need to use the automobile, buyers cannot be induced to buy more or less of the product in any significant sense through price changes.

101.     Because the price for Tires is highly inelastic, Defendants were able to and did collectively raise prices to supracompetitive levels without losing revenue. For example,

Bridgestone America's chief operating officer reported, "We're certainly seeing a red-hot economy that, despite the price increases and inflation, demand still remains quite strong."[88]

### 5.    Tires are Standardized Products with a High Degree of Interchangeability

102.    Defendants make similar models of Tires for each of the type-categories listed above (all-season, all-terrain, winter/snow, and summer tires). Within each type-category, Tires do not differ significantly in quality, appearance, or use. As a result, Tire models are functionally interchangeable.

103.    When purchasing a new set of four replacement tires, consumers can choose almost any brand on the market. Even when consumers are replacing only some of the four tires, they can use tires from different brands or models so long as certain features, such as tread depth, are similar.[89] Thus, Tire "producers are not likely to be able to deviate much from the competitive price without losing sales."[90]

104.    When products are interchangeable, the primary way to compete is on the basis of price. The avoidance of price-based competition is the primary motivation for forming a cartel. Thus, cartels are more likely when the participants sell interchangeable products. Where a product like a Tire is interchangeable, economics suggests that cartel behavior is facilitated because, *inter alia*, cartel members can more easily monitor and detect defections from a price-fixing agreement.

---

[88] https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors

[89] https://www.prioritytire.com/blog/should-you-be-mixing-tire-brands-on-the-same-vehicle/

[90] *Economic Analysis of the Rubber Tire Manufacturing MACT*, U.S. Environmental Protection Agency (August 2000), at 2-13, https://www.epa.gov/sites/default/files/2020- 07/documents/rubber-tire-mfg_ip_08-2000.pdf.

### 6.    Defendants are Recidivist Violators of Antitrust Laws

105.    The U.S. Tire industry for years has been highly concentrated, and there is a history of antitrust violations by Tire manufacturers.

106.    In 2008, the South African Competition Authority conducted search and seizure operations at the premises of Bridgestone, Dunlop, and the South African Tyre Manufacturers' Conference ("SATMC").[91] These raids resulted in South African's competition authority issuing fines against Goodyear and Continental, while Bridgestone South Africa (Pty) Ltd. escaped a fine after admitting to taking part in the alleged cartel and receiving conditional immunity after filing a leniency application with the regulator.[92]

107.    In 2019, Defendants Bridgestone and Continental were amongst the 52 automotive suppliers that paid a total of $23 million in settlements for antitrust law violations brought by the California Attorney General.[93]

## VII.    **TOLLING OF THE STATUTES OF LIMITATIONS**

108.    Class member purchases of Tires within four years prior to the filing of this Complaint are not barred by the applicable four-year statutes of limitations; the statutes are not required to be tolled for these claims to be actionable.

109.    Plaintiffs and the Class did not know and could not have known of Defendants' illegal conduct until the European Commission announced dawn raids in the tire industry on January 30, 2024. Before then, Plaintiffs and the Class had no reason to believe that they paid prices for tires that were affected by Defendants' illegal conduct, and thus had no duty until then

---

[91] https://irglobal.com/article/tyresome-collusion-tribunal-hearing-into-alleged-tyre-cartel/

[92] https://www.law360.com/articles/192122/s-africa-targets-goodyear-others-in-tire-cartel- case?copied=1

[93] https://www.tyrepress.com/2019/12/tyremakers-among-52-automotive-suppliers-in-us23- million-antitrust-settlement/

to investigate the claims set forth in this Complaint. Defendants' secret price-fixing agreements were inherently self-concealing.

110.    Additionally, Defendants engaged in affirmative acts that were designed to mislead and conceal their illegal conduct. For example, Michelin attributed its 12% price increase on passenger and light truck replacement tires in 2022 to "market dynamics."[94] Goodyear justified its July 1, 2022 price increase on consumer tires to rising raw-materials and other inflation-impacted costs.[95] Pirelli justified its April 11, 2022 price increase to "changing market conditions."[96]

111.    Accordingly, to the extent that tolling is necessary to advance some or all of the claims alleged by Plaintiffs and the Class, the four-year statutes of limitations governing claims under the Sherman Act were tolled at least until January 30, 2024, pursuant to the injury-discovery rule and the doctrine of fraudulent concealment.

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Sherman Act, 15 U.S.C. § 1**
**(By All Plaintiffs, Individually and on Behalf of the Class Against All Defendants)**

112.    Plaintiffs hereby repeat and incorporate by reference each preceding paragraph as though fully set forth herein.

113.    Defendants entered into and engaged in a continuing combination, conspiracy or agreement to unreasonably restrain trade or commerce in violation of Section 1 of the Sherman

---

[94] https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across- passenger-brands-and-commercial-offers-in-north-american-market-301435108.html

[95] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1

[96] https://www.tirereview.com/pirelli-increases-price-for-tires/

Act (15 U.S.C. § 1) by artificially restraining competition with respect to the price of new replacement tires for passenger cars, vans, trucks and buses sold within the United States.

114.    Defendants' activities constitute a *per se* violation of Section 1 of the Sherman Act.

115.    Defendants' anticompetitive and unlawful conduct has proximately caused injury to Plaintiffs and members of the Class by restraining competition and thereby raising, maintaining and/or stabilizing the price of Tires at levels above what would have occurred if competition had prevailed.

116.    Defendants are recidivists, and continue to assert that their conduct was legitimate. The fact that the conduct alleged may have ceased at some point does not mean that Defendants will not engage in similar types of price-fixing in the future.

117.    For this conduct, Plaintiffs and members of the Class are entitled to injunctive relief, and attorneys' fees and costs pursuant to Section 4 of the Clayton Act (15 U.S. Code § 15) and 15 U.S.C. § 26.

## SECOND CLAIM FOR RELIEF

**Violations of California's Unfair Competition Law
Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")
(By Plaintiff Seda Individually and on Behalf of the
California Subclass Against All Defendants)**

118.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

119.    The violations of federal antitrust law set forth above also constitute violations of section 17200, et seq. of California Business and Professions Code.

120.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

121.    This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

122.    The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of section 16720, et seq., of California Business and Professions Code, set forth above.

123.    Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of section 16720, et seq., of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

124.    Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing California Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

125.    Plaintiffs and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

126.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

127.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the California Class to pay supra-competitive and artificially-inflated prices for tires sold in the State of California. Plaintiffs and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

128.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

## THIRD CLAIM FOR RELIEF

**Violation of California's Cartwright Act,
Cal. Bus. & Prof. Code § 16700, *et seq*
(By Plaintiff Seda Individually and on Behalf of the
California Subclass Against All Defendants)**

129.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

130.    The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

131.    California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

132.    Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Cal. Bus. & Prof. Code § 16750(a).

133.    A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. Id. at § 16726.

134.    Plaintiff purchased Tires within the State of California during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

135.    Defendants enacted a combination of capital, skill or acts for the purpose of creating and carrying out restrictions in trade or commerce, in violation of Cal. Bus. & Prof. Code § 16700, et seq.

136.    Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing California plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the plaintiffs by the exercise of reasonable diligence should have discovered it.

137.    Plaintiffs and members of the Class were injured in their business or property, with respect to purchases of Tires in California and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(By Plaintiff Seda Individually and on Behalf of the**
**California Subclass Against All Defendants)**

138.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

139.    Plaintiff purchased tires within the State of California during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

140.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in California at prices that were more than they would have been but for Defendants' actions. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing California Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

141.    Plaintiff and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## FIFTH CLAIM FOR RELIEF

**Violation of the Illinois Antitrust Act, 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.***
**(By Plaintiff Holt Individually and on Behalf of the**
**Illinois Subclass Against All Defendants)**

142.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

143.    The Illinois Antitrust Act, 740 ILCS 10/1, et seq., aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of

trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740 Ill. Comp. Stat. 10/2.

144.     Plaintiff and members of the Class purchased tires within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price for tires would have been lower, in an amount to be determined at trial.

145.     Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 Ill. Comp. Stat. 10/7(2).

146.     Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling or maintaining prices for tires sold, and/or for allocating customers or markets for tires within the intrastate commerce of Illinois.

147.     Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for tires in Illinois for the purpose of excluding competition, in violation of 740 Ill. Comp. Stat. 10/1, et seq.

148.     Defendants wrongfully concealed the facts alleged herein giving rise to the unlawful conduct by the affirmative acts described herein with the intent to deceive the Plaintiff and Class members. Plaintiff and the Class did not know and could not have known about Defendants' unlawful conduct until January 30, 2024.

149.     Plaintiff and the Class were injured with respect to purchases of tires in Illinois and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

**Fraud – Common Law**
**(By Plaintiff Holt Individually and on Behalf of the**
**Illinois Subclass Against All Defendants)**

150.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

151.    Plaintiff purchased tires within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

152.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in Illinois at prices that were more than they would have been but for Defendants' actions. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing Illinois Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

153.    Plaintiff and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## SEVENTH CLAIM FOR RELIEF

**Violation of the Missouri Merchandising Practices Act,**
**Mo. Ann. Stat. § 407.010, *et seq.***
**(By Plaintiff Merkel Individually and on Behalf of the**
**Missouri Subclass Against All Defendants)**

154.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

155.    Plaintiffs and members of the Missouri Class purchased tires during the Class Period for personal, family, or household purposes.

37

156.    By reason of the conduct alleged herein, Defendants have violated Missouri's Merchandising Practices Act (the "MMPA"), specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ."

157.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Tires Market, a part of which occurred within Missouri.

158.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Tires Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a part of which occurred within Missouri.

159.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

160.    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and the members of the Missouri Class concerning Defendants' unlawful activities. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and the members of the Missouri Class as they relate to the cost of tires they purchased.

161.    Defendants misrepresented the real cause of prices increases and/or the absence of price reductions in their tires by making public statements that were not in accord with the facts.

162. Defendants' statements and conduct concerning the price of tires were deceptive as they had the tendency or capacity to mislead Plaintiff and the members of the Missouri Class to believe that they were purchasing tires at prices established by a free and fair market.

163. Defendants' unlawful conduct substantially affected Missouri commerce.

164. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Missouri Class suffered ascertainable loss of money or property.

165. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct. As alleged herein, until January 30, 2024, Defendants affirmatively and successfully concealed their unlawful conduct which prevented the Missouri Plaintiffs and the Class from discovering Defendants' unlawful conduct. As a result of this fraudulent concealment, this cause of action did not accrue until January 30, 2024.

166. Accordingly, Plaintiffs and members of the Missouri Class seek all relief available under the MMPA, specifically Mo. Rev. Stat. § 407.020, as further interpreted by Title 15 of the Missouri Code of State Regulations, 15 CSR 60- 7.010, et seq., 15 CSR 60-8.010, et seq., and 15 CSR 60-9.010, et seq., and Mo. Rev. Stat. § 407.025 which provides for the relief sought in this count.

## EIGHTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(By Plaintiff Merkel Individually and on Behalf of the**
**Missouri Subclass Against All Defendants)**

167. Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

168. Plaintiff purchased tires within the State of Missouri during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

169.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in Missouri at prices that were more than they would have been but for Defendants' actions. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing Missouri Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

170.    Plaintiff and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## NINTH CLAIM FOR RELIEF

**Violation of the Nevada Undair Trade Practices Act,**
**NV Rev. Stat. § 598A.010, et *seq*.**
**(By Plaintiff Ammons Individually and on Behalf of the**
**Nevada Subclass Against All Defendants)**

171.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

172.    Plaintiff and Class members purchased Defendants' tires within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price per tire would have been lower, in an amount to be determined at trial.

173.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in Nevada at prices that were more than they would have been but for Defendants' actions.

174.    Plaintiff and Class members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for Defendants' tires.

175.    Defendants appreciated the benefits bestowed upon them by Plaintiff and Class members, for which they have paid no consideration to any other person.

40

176.    Defendants have knowingly accepted and retained the benefits bestowed upon them by Plaintiff and Class members.

177.    Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct. Until January 30, 2024, the Plaintiff and Class members did not discover and could not have discovered by the exercise of reasonable diligence Defendants' unlawful conduct.

178.    The circumstances under which Defendants have accepted and retained the benefits bestowed upon them by Plaintiff and Class members are inequitable in that they result from Defendants' unlawful overcharges for Defendants' tires.

**TENTH CLAIM FOR RELIEF**

**Unjust Enrichment**
**(By Plaintiff Ammons Individually and on Behalf of the**
**Nevada Subclass Against All Defendants)**

179.    Plaintiff hereby repeats and incorporates by reference each preceding paragraph as though fully set forth herein.

180.    Plaintiff purchased tires within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

181.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in Nevada at prices that were more than they would have been but for Defendants' actions. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing Nevada Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

41

182.    Plaintiff and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## ELEVENTH CLAIM FOR RELIEF

**Violation of the North Carolina Unfair Trade and Business Practices Act,
N.C. Gen. Stat. § 75-1.1, et seq.
(By Plaintiffs Derrick and Dickerson Individually and on Behalf of the
North Carolina Subclass Against All Defendants)**

183.    Plaintiffs repeat and incorporate by reference each preceding paragraph as though fully set forth herein.

184.    By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, *et seq.*

185.    Defendants entered into a contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce in the Tires Market, a substantial part of which occurred within North Carolina.

186.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

187.    Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

188.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiffs and members of the Class.

189.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

190.    Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on

the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

191.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

192.    Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct. Until January 30, 2024, the North Carolina Plaintiffs did not know and could not have learned or discovered by the exercise of due care about Defendants' unlawful conduct.

193.    By reason of the foregoing, the Plaintiffs and the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

## <u>TWELFTH CLAIM FOR RELIEF</u>

**Unjust Enrichment**
**(By Plaintiffs Derrick and Dickerson Individually and on Behalf of the**
**North Carolina Subclass Against All Defendants)**

194.    Plaintiffs hereby repeat and incorporate by reference each preceding paragraph as though fully set forth herein.

195.    Plaintiffs purchased tires within the State of North Carolina during the Class Period. But for Defendants' conduct set forth herein, the price of tires would have been lower, in an amount to be determined at trial.

196.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' tires in North Carolina at prices that were more than they would have been but for Defendants' actions. Defendants wrongfully concealed the facts alleged herein giving rise to their unlawful conduct preventing North Carolina Plaintiffs in the exercise of due diligence from uncovering the unlawful conduct. The applicable statute of limitations is tolled until January 30, 2024 until the Plaintiffs, by the exercise of reasonable diligence, should have discovered it.

197.    Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment on her behalf and on behalf of the Class defined herein, by adjudging and decreeing that:

A.    This action may proceed as a class action, with Plaintiffs serving as the Class Representatives and his counsel serving as Class Counsel;

B.    Defendants have contracted, combined, and conspired in violation of the Sherman Act and the state laws of every state;

C.    Plaintiffs and the Class have been injured in their business and property as a result of Defendants' violations;

D.    Plaintiffs and the Class are entitled to recover treble damages, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount subject to proof at trial;

E.    Plaintiffs and the Class are entitled to pre-judgment and post-judgment interest on the damages awarded them, and that such interest be awarded at the highest legal rate;

F.    Plaintiffs and the Class are entitled to equitable relief suitable to remedy Defendants' past and ongoing restraint of trade, including:

i.    A judicial determination declaring the rights of Plaintiffs and the Class, and the corresponding responsibilities of Defendants; and

ii.    Issuance of a permanent injunction against Defendants and their parents, subsidiaries, affiliates, successors, transferees, assignees and the

44

respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf from violations of the law as alleged herein.

G.    Defendants are to be jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification of this action and their rights to the Class members;

H.    Plaintiffs and the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

I.    Plaintiffs and the Class receive such other or further relief as may be just and proper.

## X.    <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims asserted in this Complaint that are so triable.

Dated: February 28, 2024                     Respectfully submitted,

_/s/ Thomas H. Burt_____
Thomas H. Burt
Lillian R. Grinnell
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
burt@whafh.com
grinnell@whafh.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois  60604
Tel: (312) 984-0000
Fax:  (212) 686-0114

45

malmstrom@whafh.com

Don Bivens*
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Tel: (602) 708-1450
don@donbivens.com

(* *pro hac vice* forthcoming)
*Attorneys for Plaintiffs*

46